OA 91   Criminal Complaint

# United States District Court FILED

RECEIVED

NORTHERN 2008 DEC 18 PM 3:59   DISTRICT OF   CALIFORNIA  P 3:34

NORTHERN DISTRICT
CALIFORNIA

UNITED STATES OF AMERICA

v.

AUSAF UMAR SIDDIQUI

SEALED BY ORDER
OF THE COURT

RICHARD W. WIEKING

CRIMINAL COMPLAINT

CLERK
U.S. DISTRICT COURT
NO. DIST. OF CA. S.J.

Case Number:

(Name and Address of Defendant)

## 08-70860

I, the undersigned complainant being duly sworn state that the following is true and correct to the best of my knowledge and belief. On or about and btw. 1/2005 and 11/2008 in Santa Clara County, in

(Date)

the Northern District of California defendant(s) did,

(Track Statutory Language of Offense)

knowingly and intentionally engaged in a monetary transaction affecting interstate commerce with criminally derived property of a value greater than $10,000 and derived from a specified unlawful activity, to wit wire fraud proceeds in violation of 18 USC 1343 and as more fully set forth in attachment A.

in violation of Title 18 United States Code, Section(s) 1957

I further state that I am a(n) IRS Special Agent and that this complaint is based on the

Official Title

following facts:

Please see attached affidavit.

Penalties: 10 years imprisonment, $250,000 fine, 3 years supervised release, $100 special assessment-18 USC 1957

No Bail Warrant Requested

Continued on the attached sheet and made a part hereof:   ☒ Yes   ☐ No

Approved
As To
Form: THOMAS MOORE
        AUSA

ANDRES GONZALEZ
Name/Signature of Complainant

Sworn to before me and subscribed in my presence,

12/18/08

Date

at SAN JOSE, CA

City and State

RICHARD SEEBORG

Name & Title of Judicial Officer

Signature of Judicial Officer

## ATTACHMENT A

Counts 1-6 (18 U.S.C., Section 1957)

### Wire Transfers from PC INTERNATIONAL, LLC Account #940-7117028

|         | Date       | Amount         | Beneficiary | Beneficiary Bank |
|---------|------------|----------------|-------------|------------------|
| Count 1 | 07/15/2005 | $3,000,000.00  | VMI         | Bank of America  |
| Count 2 | 01/13/2006 | $5,000,000.00  | VMI         | Bank of America  |
| Count 3 | 01/25/2007 | $3,000,000.00  | VMI         | Bank of America  |
| Count 4 | 06/13/2008 | $2,950,000.00  | WDR, LLC    | Bank of America  |
| Count 5 | 10/10/2008 | $2,970,000.00  | WDR, LLC    | Bank of America  |
| Count 6 | 11/12/2008 | $1,000,000.00  | WDR, LLC    | Bank of America  |

Andres Gonzalez, being duly sworn, deposes and states that he is a Special Agent with the Internal Revenue Service ("IRS"), duly appointed by law and acting as such.

Upon information and belief, in or about and between January 2005 and November 2008, both dates being approximate and inclusive, within the Northern District of California and elsewhere, AUSAF UMAR SIDDIQUI was involved in a kickback scheme to defraud Fry's Electronics, Inc (hereinafter referred to as Fry's) out of tens of millions of dollars.  In furtherance of the kickback scheme, AUSAF UMAR SIDDIQUI did knowingly and intentionally obtain proceeds derived from and traceable to a scheme or artifice to defraud.  AUSAF UMAR SIDDIQUI transmitted and or caused to be transmitted by means of wire, radio, or television communication in interstate or foreign commerce, any writings, signs, signals, pictures, or sounds for the purpose of executing such scheme or artifice when he caused to be deposited, via wire transfers, the proceeds of the kickback scheme into bank accounts that he controlled, in violation of Title 18, United States Code, Section 1343 (Wire Fraud).  Thereafter, AUSAF UMAR SIDDIQUI knowingly and intentionally engaged in a monetary transaction affecting interstate commerce with criminally derived property of a value greater than $10,000 and derived from a specified unlawful activity, to wit wire fraud proceeds of Title 18, United States Code, Section 1343 (Wire Fraud), in violation of Title 18, Section 1957 (Money Laundering).

The source of my information and the grounds for my belief are as follows:

I.      BACKGROUND

1. This investigation was initiated on October 17th, 2008, when a shareholder at Fry's, who has requested to remain as a confidential source (hereinafter CS), reported to the Internal Revenue Service – Criminal Investigation that AUSAF UMAR SIDDIQUI was involved in a kickback scheme with various Fry's vendors. The CS disclosed that the kickback scheme defrauded Fry's out of tens of millions of dollars. The CS provided documentary evidence in support of the allegations.

2. The CS is a shareholder who holds an upper-level management position within Fry's. Fry's is a privately owned company that was founded in 1985 as a "one-stop shopping" retail electronics store. Fry's purchases merchandise from various vendors and resells the merchandise in their retail stores. Fry's currently operates 34 brick-and-mortar stores in nine U.S. states: California (17 stores); Texas (8); Arizona (2); Georgia (2); Illinois (1); Indiana (1); Nevada (1); Oregon (1); and Washington (1). Forbes Magazine estimates that in 2007, Fry's had approximetly 14,000 employees nation-wide and generated approximelty $2.35 billion in revenues.

3. The CS stated that AUSAF UMAR SIDDIQUI has worked his way up the Fry's hierarchy since being hired in 1988. AUSAF UMAR SIDDIQUI started his career at Fry's as a Computer Salesperson, and later held positions as a Computer Department Supervisor, Computer Department Manager, and Director of Advertising. AUSAF UMAR SIDDIQUI eventually became the Vice President of Merchandising and Operations in 2003. The CS stated that AUSAF UMAR SIDDIQUI currently earns an annual salary of approximately $225,000. Due to his

experience, the CS believes that AUSAF UMAR SIDDIQUI is well aware of the internal procedures and interworking of the entire Fry's organization.

4.  As Vice President of Merchandising and Operations, AUSAF UMAR SIDDIQUI is primarily responsible for purchasing all of the merchandise that is sold in all thirty-four (34) "big-box" retail stores that Fry's owns and operates throughout the United States.  The Merchandising and Operations Division of Fry's consists of approximately 120 employees who work under AUSAF UMAR SIDDIQUI'S supervision and control.

5.  On February 7, 1988, AUSAF UMAR SIDDIQUI signed an employee contract that outlines prohibited employee behavior within the Fry's organization.  The contract forbids employees from stealing and acting in any manner which is not consistent with the best interest of Fry's.  Additionally, the CS stated that Fry's employees have been terminated for receiving kickbacks from vendors in the past, and that it is common knowledge within the Fry's organization that employees should not directly or indirectly receive any form of commission, kickback, gift, or gratuity from any Fry's vendor.

6.  In the retail electronics industry, vendors typically pay sales representatives a commission based on the amount of business that they secure from clients like Fry's.  Sales representatives usually are not employed by the vendor or the client (Fry's).  Sales representatives generally operate as independent contractors that negotiate contracts that will satisfy both the vendor and the client (Fry's).

Legitimate vendors usually pay sales representatives commissions of three (3) to eight (8) percent of the total business that they secure with Fry's.

7.  Under the guise of allowing Fry's to purchase merchandise at a lower cost, AUSAF UMAR SIDDIQUI sought and obtained permission from Fry's executives to deal directly with the vendors and avoid the sales representatives customarily used. AUSAF UMAR SIDDIQUI advised the Fry's executives that the circumvention of these "middle-men" would allow vendors to avoid paying commissions to sales representatives and sell their merchandise to Fry's at a lower cost.  AUSAF UMAR SIDDIQUI articulated that the move would save Fry's money and ultimately make Fry's more profitable.

8.  AUSAF UMAR SIDDIQUI has made secret, backroom deals with certain Fry's vendors without the knowledge of Fry's executives.  As a result of these deals, AUSAF UMAR SIDDIQUI awards sales contracts to vendors involved in the kickback scheme.  In return, vendors pay AUSAF UMAR SIDDIQUI a kickback, or "commission", based on the amount purchased by Fry's.  AUSAF UMAR SIDDIQUI receives these kickbacks through a fraudulent company named PC INTERNATIONAL, LLC.  PC INTERNATIONAL, LLC. is a "straw company" that is owned and controlled by AUSAF UMAR SIDDIQUI, and whose only purpose is to help facilitate the payments and conceal the proceeds obtained by defrauding Fry's.

9.  AUSAF UMAR SIDDIQUI awards sales contracts to vendors based on an understanding that requires them to pay PC INTERNATIONAL, LLC. a kickback directly related to the percentage of the total revenue that they generate as a result

4

of doing business with Fry's. The CS provided documentary evidence that shows that the vendors that have an agreement with AUSAF UMAR SIDDIQUI pay PC INTERNATIONAL, LLC. kickbacks of up to 31% to do business with Fry's. The 31% that the vendors pay AUSAF UMAR SIDDIQUI is four (4) to ten (10) times more than what a legitimate vendor would pay a typical sales representative. In order to offset the higher commissions that the vendors pay to PC INTERNATIONAL, LLC., AUSAF UMAR SIDDIQUI has arranged to purchase merchandise from these vendors at costs that are above market value. As a result of the arrangement, AUSAF UMAR SIDDIQUI causes Fry's to overpay for the merchandise that they obtain from these vendors, and in many instances, Fry's is forced to sell the merchandise at a reduced price that results in a loss to Fry's.

10. AUSAF UMAR SIDDIQUI abuses his position within Fry's and purchases less merchandise from vendors that are not involved in the kickback scheme. Instead, AUSAF UMAR SIDDIQUI maintains a full inventory of merchandise obtained from the vendors that pay kickbacks to PC INTERNATIONAL, LLC. The CS stated that the kickback scheme hinders Fry's' ability to remain profitable when they sell the merchandise that they purchase from vendors that are involved in the kickback scheme.

11. On or around October 1, 2008, the CS obtained documentary evidence from AUSAF UMAR SIDDIQUI'S office located at Fry's, 600 E. Brokaw Road, San Jose, California. The CS explained that he/she went into AUSAF UMAR SIDDIQUI'S office without his knowledge, to retrieve a document related to a matter that they

had discussed previously.  The CS stated that he/she was surprised to see the evidence corresponding to the kickback scheme.  The evidence that the CS encountered consisted of spreadsheets detailing purchase orders, sales amounts, and kickback amounts that were paid to AUSAF UMAR SIDDIQUI.  The evidence provides a detailed summary of kickbacks that were paid to AUSAF UMAR SIDDIQUI by Phoebe Micro, Inc., Lead Data International, Inc., U.S. Media Technologies, Inc., and Elitegroup Computer Systems, Inc. (ESC).  Fry's is currently purchasing and has purchased merchandise from all four (4) of these vendors.  Phoebe Micro, Inc. distributes networking products such as wireless cards[1], routers[2], and Internet cameras.  Lead Data International, Inc. and U.S. Media Technologies distribute computers and computer components. Elitegroup Computer Systems (ECS) distributes computers, USB flash drives[3], and computers related products.  The CS stated that there is no legitimate business reason why AUSAF UMAR SIDDIQUI would be in possession of such documents, and added that the documents corroborate AUSAF UMAR SIDDIQUI'S involvement in a kickback scheme to defraud Fry's.

II.    PROBABLE CAUSE TO ARREST AUSAF UMAR SIDDIQUI

a. Information provided by the CS regarding Phoebe Micro, Inc.

12.  The CS provided several documents that were recovered from AUSAF UMAR SIDDIQUI'S office which outline the illegal business relationship between PC

---

[1] A wireless card is a computer component that allows you to send and receive data from the Internet in real-time.
[2] A router is a device or, in some cases, software in a computer, that determines the next network point to which a packet should be forwarded toward its destination.

INTERNATIONAL, LLC and Phoebe Micro, Inc (hereinafter Phoebe). One document that the CS provided consists of a spreadsheet titled "Sales Report" dated July 7, 2008. The spreadsheet indicates that Phoebe issued invoices to Fry's for a total of $80,073,906.15, between 2003 and June 30, 2008. The spreadsheet shows that Fry's received a 5% discount for the merchandise from Phoebe. As a result, Fry's paid Phoebe 5% less than the invoiced amount, or $76,034,033.20. Of this amount, the spreadsheet shows that Phoebe paid kickbacks of $24,086,370.43 to AUSAF UMAR SIDDIQUI through PC INTERNATIONAL, LLC. According to the spreadsheet, the kickbacks total approximately 31.67% of what Fry's paid to Phoebe for the merchandise. Based on this spreadsheet, the CS believes that Fry's overpaid for the merchandise valued at $76,034,033.20 that they purchased from Phoebe. The overpayment of the merchandise was a direct result of the 31.67% kickback that had to be paid from Phoebe to PC INTERNATIONAL, LLC.

13. The CS provided another spreadsheet dated July 7, 2008, titled "Advance Commission Payment". This spreadsheet details that Phoebe sent 23 payments totaling $17,381,071 categorized as "advanced commission payments" to PC INTERNATIONAL, LLC, between July 30, 2003 and April 11, 2008. The average payment made from Phoebe to PC INTERNATIONAL, LLC during this time period was approximately $755,000.

---

[3] A USB flash drive is a plug-and-play portable computer storage device.

14. In addition to the two spreadsheets outlined above, the CS uncovered a letter from

    Phoebe to PC INTERNATIONAL, LLC in AUSAF UMAR SIDDIQUI'S office. This

    letter is dated July 2, 2008, and is addressed to "PC International" and signed by

    Ruby Lui, President of Phoebe Micro, Inc. The letter states as follows:

    > This is a confirmation letter stating that Phoebe Micro, Inc. has received
    > $3,000,000.00 check dated on June 30, 2008 from PC International which payoff
    > the loan that we wired transfer on June 12, 2008. Please contact me if you have
    > any questions.

    The CS indicated that the letter illustrates the illegal business relationship between

    PC INTERNATIONAL, LLC and Phoebe.

    **b. Information provided by the CS regarding Lead Data International, Inc.**

15. The CS provided several documents that were recovered from AUSAF UMAR

    SIDDIQUI'S office which outline the illegal business relationship between PC

    INTERNATIONAL, LLC and Lead Data International, Inc (hereinafter LDI). One

    document that the CS provided consists of a spreadsheet titled "Summary of

    Commission" dated July 3, 2008. The spreadsheet has the word "Confidential"

    written on the right hand corner of the document. This spreadsheet indicates that

    LDI issued invoices to Fry's totaling $13,758,184.42, between 2007 and June 23,

    2008. Of the $13,758,184.42, the spreadsheet shows that LDI paid kickbacks of

    $3,339,953.19 to PC INTERNATIONAL, LLC during the same time period. The

    kickbacks total approximately 24.27% of what Fry's paid LDI for the merchandise.

    Based on this spreadsheet, the CS believes that Fry's overpaid for the merchandise

    valued at $13,758,184.42 that they purchased from LDI. The overpayment of the

8

merchandise was a direct result of the 24.27% kickback that had to be paid from LDI to PC INTERNATIONAL, LLC.

16. Furthermore, the same spreadsheet shows that LDI made "prepaid commission" payments to PC INTERNATIONAL, LLC of $193,203.77 in 2007 and $2,100,000 in 2008. The spreadsheet shows that LDI made seven (7) prepaid commission payments to PC INTERNATIONAL, LLC via wire transfers totaling $2,100,000 in 2008. The wire transfers to PC INTERNATIONAL, LLC were made during the first five (5) months of 2008.

17. Another document that the CS provided consists of a spreadsheet titled "Summary of Commission" dated December 2, 2004. The spreadsheet has the word "Confidential" written on the right hand corner of the document. This spreadsheet indicates that LDI issued invoices to Fry's totaling $20,985,630.20, between January 2004 and November 29, 2004. Of the $20,985,630.20, the spreadsheet shows that LDI paid kickbacks of $4,286,380.98 to PC INTERNATIONAL, LLC during the same time frame. The kickbacks total approximately 20.42% of what Fry's paid LDI. Furthermore, the spreadsheet shows that LDI made "prepaid commission" payments to PC INTERNATIONAL, LLC of $4,050,000 in 2004. The spreadsheet shows that LDI made twelve (12) prepaid commission payments to PC INTERNATIONAL, LLC via wire transfers totaling $4,050,000. Based on this spreadsheet, the CS believes that Fry's overpaid for the merchandise valued at $20,985,630.20 that they purchased from LDI. The overpayment of the

merchandise was a direct result of the 20.42% kickback that had to be paid from LDI to PC INTERNATIONAL, LLC.

18. In addition to the two spreadsheets outlined above, the CS uncovered several letters from LDI to PC INTERNATIONAL, LLC in AUSAF UMAR SIDDIQUI'S office. All of the letters were addressed to "Mr. Omar Siddiqui, Fry's Electronics, Inc., 600 East Brokaw Road, San Jose, California, 95112". The letters were signed by "Ken Shih, Lead Data USA, 16030 Carmenita Road, Cerritos, California". According to the letters, Ken Shih has been identified as the President of LDI. The CS believes that the letters further illustrate the illegal business relationship between LDI and PC INTERNATIONAL, LLC. Below are certain sections from the letters that illustrate the illegal business relationship between PC INTERNATIONAL, LLC and LDI.

19. A letter dated November 3, 2004 illustrates LDI's involvement in the scheme to increase kickback payments to PC INTERNATIONAL, LLC. The letter states the following:

> Dear Omar,
>
> In order to generate more commission to PCI, I have worked with Mr. Lin and factories to get suitable SKU's[4] for Fry's. I am glad to report you that a new company is ready and all new SKU's are ready too...I believe it will be a big help to provide more support to PCI...the name of this new company is USMedia Technologies. It is a private company and owned by Mr. L.S. Lin et al. This arrangement will be convenient to handle commission...If you are OK to this proposal, I would like to set-up USMedia as Fry's new account and bring product into LA warehouse quickly to start up the business from Jan 2005.

---

[4] A SKU is number associated with a particular product, often represented by a barcode. The SKU is used to track inventory.

Case5:09-cr-00018-JF   Document1   Filed12/18/08   Page13 of 26

20. A letter dated November 5, 2004 illustrates LDI's involvement in the kickback scheme with PC INTERNATIONAL, LLC.  It also shows that LDI has taken the necessary steps to disguise the kickbacks that are being paid out to PC INTERNATIONAL, LLC.  Furthermore, it shows that LDI is trying to hide the kickbacks from their own accounting department and the Taiwanese - Security and Exchange Commission.  The letter states the following:

> Dear Omar,
>
> ...I understand you are very busy, especially in November and December.  But there are two important issues waiting for your approval:
>
> 1)  Representative & Marketing Agreements:
>     It is an important procedure to protect PCI.  Without new arrangement, I am afraid high amount of commission will bring unnecessary attention from CPA and SEC-Taiwan.
>
> 2)  New Account:
>     It is ready to go.  If you approve, DV case[5] and Jewel case[6] will be available before Christmas.  Other SKUs will be available in Jan.
>
> Besides generating more support to PCI, this new account can protect PCI too.  If there still has prepay to PCI in end of December, MR. L.S. Lin agree to transfer it from LD-USA to USMedia to avoid PCI's prepay be shown in Lead Data's yearly Financial Statement.
>
> Thanks for your attention and support to this two issues.  I hope you can approve this two issues ASAP.  If you need me to explain directly to you and your CPA, I would like to have opportunity to meet you on next week.

21. A letter dated June, 5, 2008 illustrates LDI's involvement in the kickback scheme with PC INTERNATIONAL, LLC.  It also shows that LDI makes prepaid kickbacks to PC INTERNATIONAL, LLC.  The letter states the following:

---

[5] A DV case is a digital video case.
[6] A jewel case is a plastic container used to package an audio disc.

*Dear Omar,*

*In past several days, I had several conference calls with factory about the support to PCI.  In the beginning, they are reluctant.  Factory has cash flow difficulty from bad global economy recession.  But, finally they agree to do support.  They agree to do $1.0M support in end of June, but ask prepay amount not exceed $2.0M.  Besides, they hope prepay can be reduced to $1.0M before end of September.  I understand it maybe not enough for PCI.  But I know factory has done the best at this special moment.*

22.  The CS provided a draft of a "General Marketing Agreement" between LDI and PC INTERNATIONAL, LLC that was recovered from AUSAF UMAR SIDDIQUI'S office. The document was not signed by either party.  Below are certain sections from the document that illustrate the relationship between PC INTERNATIONAL, LLC and LDI.  These sections show that LDI and PC INTERNATIONAL, LLC could have formalized their business relationship through a contract that stipulates that LDI would pay PC INTERNATIONAL, LLC kickbacks at a rate of 15% of the total business that AUSAF UMAR SIDDIQUI could secure for LDI from Fry's.  The document states the following:

*This GENERAL MARKETING AGREEMENT...between Lead Data International, Inc. ("Lead Data"), corporation organized and duly formed under the laws of the State of California, having its principal place of business at 16030 Carmernita Avenue, Cerritos, California 90703, and PC International, LLC, a limited liability company organized and duly formed under the laws of the State of California, having its principal place of business at 800 East Charleston Road, #22, Palo Alto, California, 94313 ("Representative")...*

*A. Lead Data is a manufacturer, importer, distributor and seller of certain computer equipment, media, products and related accessories.*

*B. Representative is a business that assists with the advertising and marketing of certain computer equipment, media and related accessories in the United States.*

*C. The parties desire to develop and maintain a volume of sales of certain*

12

> Lead Data computer equipment, media, products and related accessories
> in the United States through Representative's advertising and marketing
> efforts.

> ...The Marketing Fees shall be 15.0 % of the Net Invoice received by Lead Data
> from the Accounts.   The Marketing Fees shall be calculated from Net Invoice
> after certain returns and taxes have been deducted, subject to Section 4.2.3.

23. The general marketing agreement above identified "PC International's" place of business as 800 East Charleston Road, Palo Alto, California.  This address has been confirmed to be SIDDIQUI'S residence through surveillance, a search of SIDDIQUI'S personnel records, a search of SIDDIQUI'S bank records, and through a county records search.

### c. Information provided by the CS regarding U.S. Media Technologies

24. The CS provided one document that was recovered from AUSAF UMAR SIDDIQUI'S office which outlines the illegal business relationship between PC INTERNATIONAL, LLC and U.S. Media Technologies (hereinafter U.S. Media). The document that the CS provided consists of a spreadsheet titled "Summary of Commission" dated July 3, 2008.  The spreadsheet has the word "Confidential" written on the right hand corner of the document.  This spreadsheet indicates that U.S. Media issued invoices to Fry's totaling $35,550, between January 21, 2008 and June 23, 2008.  Of the $35,550, the spreadsheet shows that U.S. Media paid kickbacks of $4,977 to PC INTERNATIONAL, LLC; or 14% of what Fry's paid to U.S. Media.  Based on this spreadsheet, the CS believes that Fry's overpaid for the merchandise valued at $35,550 that they purchased from U.S. Media.  The overpayment of the merchandise was a direct result of the 14% kickback that had to

13

be paid from U.S media to PC INTERNATIONAL, LLC.  Furthermore, the

spreadsheet also shows that U.S. Media made prepaid commission payments to

PC INTERNATIONAL, LLC of $925,506.73 in 2007.

**d. Information provided by the CS regarding Elitegroup Computer Systems (ECS)**

25.  The CS provided five (5) separate $5,000,000 "promissory notes" that were

recovered from AUSAF UMAR SIDDIQUI'S office.  The promissory notes outline

the illegal business relationship between ECS and PC INTERNATIONAL, LLC.  The

promissory notes show that "A-Umar Siddiqui" and "PC International, LLC"

borrowed a total of $25,000,000 from Chaing Tung Chun, between June 25, 2002

and May 9, 2003.  The promissory notes show that AUSAF UMAR SIDDIQUI

intended to re-pay the borrowed money via anticipated kickbacks that he would

receive for securing ECS future business with Fry's.  Four (4) of the five (5)

promissory notes state the following regarding the conditions of re-payment:

> ...the undersigned hereby promises to pay the sum of five million dollars
> ($5,000,000), to the order of Chiang Tung Chun, the sum shall be paid from the
> commission earned and accumulated from the business transactions which will
> be brought to ECS by PC International, LLC...

26.  The CS identified AUSAF UMAR SIDDIQUI'S signature on four (4) out of the five

(5) promissory notes.  The CS stated that AUSAF UMAR SIDDIQUI signed two (2)

of the promissory notes above the signature line "A-Umar Siddiqui".  The CS stated

that AUSAF UMAR SIDDIQUI signed two (2) of the promissory notes above the

signature line "PC International, LLC".  AUSAF UMAR SIDDIQUI'S signature does

not appear on one of the $5,000,000 promissory notes.  Since these loans were

made in 2002 and 2003, the CS believes that the loans have been paid off via the kickbacks that AUSAF UMAR SIDDIQUI has received.

### e. Corroboration of purchase orders provided by Fry's

27. An upper-level manager of Fry's that works with the CS (hereinafter CS-2) is currently conducting an independent internal investigation of AUSAF UMAR SIDDIQUI'S fraudulent activities.  In support of the investigation that CS-2 is conducting, he/she collected additional information from SIDDDIQUI'S office on October 22, 2008.  CS-2 voluntarily provided me with copies of some of the information that he/she is using in his/her investigation.

28. In addition to collecting information, CS-2 conducted a search of Fry's accounting data to verify the accuracy of the spreadsheets that the CS obtained from AUSAF UMAR SIDDIQUI'S office.  CS-2 corroborated all of the spreadsheets that I discussed previously in this affidavit pertaining to Phoebe, LDI, and U.S. Media. Specifically, CS-2 examined the purchase orders that Fry's has on file related to these three (3) vendors.  All of the purchase orders that CS-2 sampled corroborate the purchase order amounts listed on the spreadsheets recovered from AUSAF UMAR SIDDIQUI'S office.  The CS believes that Fry's has purchased and paid for the merchandise indicated on the spreadsheets.  As a result, I believe that the spreadsheets that were recovered from AUSAF UMAR SIDDIQUI'S office accurately represent the kickbacks that AUSAF UMAR SIDDIQUI received from these vendors.

### f. Corroborating information from Wells Fargo Bank

15

29. I analyzed bank records belonging to PC INTERNATIONAL, LLC and AUSAF UMAR SIDDIQUI obtained via a grand jury subpoena. An analysis was done of bank records corresponding to PC INTERNATIONAL, LLC's Wells Fargo business checking account #940-7117028, for the transactions that took place between January 1, 2005 and November 30, 2008. AUSAF UMAR SIDDIQUI is the only individual with signature authority for PC INTERNATIONAL, LLC's business checking account #940-7117028.   The analysis of PC INTERNATIONAL, LLC's business checking account revealed deposits of $167,808,116.49 that were made to the account within the time frame specified above. Of the $167,808,116.49, seventy (70) wire transfers, totaling $65,584,864, were deposited into the account by five (5) known Fry's vendors:  1) Behavior Tech Computer (USA); 2) Phoebe Micro, Inc; 3) Lead Data International, Inc; 4) Promedia Technologies, Inc; and 5) Elitegroup Computer Systems (ECS).

| Vendor | Year | Amount |
|---|---|---|
| **Behavior Tech Computer, Inc. (USA):** | 2005 | $3,000,000 |
| | 2006 | 5,000,000 |
| | 2007 | 9,000,000 |
| | 2008 | 4,500,000 |
| | Total | **$21,500,000** |
| **Phoebe Micro, Inc:** | 2005 | $4,800,000 |
| | 2006 | 3,550,000 |
| | 2007 | 5,000,000 |
| | 2008 | 8,000,000 |
| | Total | **$21,350,000** |
| **Lead Data International, Inc:** | 2005 | $2,750,000 |
| | 2006 | 1,750,000 |
| | 2007 | 2,500,000 |
| | 2008 | 3,200,000 |
| | Total | **$10,200,000** |

16

| Promedia Technologies, Inc: | 2005 | |
| | 2006 | $750,000 |
| | 2007 | 2,500,000 |
| | 2008 | 2,535,000 |
| | Total | **$5,785,000** |
| *Elitegroup Computer Systems (ECS): | | |
| | 2005 | $3,749,904 |
| | 2006 | 1,999,980 |
| | 2007 | 999,980 |
| | 2008 | |
| | Total | **$6,749,864** |
| **Grand Total:** | | **$65,584,864.00** |

*The deposits corresponding to ECS / Elitegroup Computer Systems were made by three entities that are components of ECS / Elitegroup Computer Systems: 1) Chiang Tung Chun; 2) Super ECS Co., ltd; and 3) ECS Trading Co.,Ltd.

30.  The analysis of PC INTERNATIONAL, LLC's business checking account #940-7117028 revealed withdrawals of $162,246,558.70 that were drawn on the account between January 1, 2005 and November 30, 2008.  Of the $162,246,558.70, AUSAF UMAR SIDDIQUI transferred over 75% of the funds, or $121,855,000, to three (3) entities that belong to casinos in Las Vegas, Nevada:  1) Venetian Marketing, Inc. (VMI), 2) WDR, LLC, and 3) Destron, Inc.  An Internet search revealed that Venetian Marketing, Inc. (VMI) and WDR, LLC both belong to the Las Vegas Sands Casino, and Destron, Inc. belongs to MGM Grand Casino.  The funds that were transferred to the casinos consisted of one (1) check and seventy-nine (79) wire transfers.  AUSAF UMAR SIDDIQUI transferred funds to casinos as follows:

| Casino | Year | Amount |
|---|---|---|
| Venetian Marketing, Inc. (VMI) | 2005 | $31,295,000.00 |
| | 2006 | $18,020,000.00 |

17

| | | |
|---|---|---:|
| | 2007 | $21,070,000.00 |
| | 2008 | |
| | **Total** | **$70,385,000.00** |
| **WDR, LLC** | 2005 | |
| | 2006 | |
| | 2007 | |
| | 2008 | $33,857,500.00 |
| | **Total** | **$33,857,500.00** |
| **Destron, Inc.** | 2005 | |
| | 2006 | $2,350,000.00 |
| | 2007 | $13,162,500.00 |
| | 2008 | $2,100,000.00 |
| | **Total** | **$17,612,500.00** |
| **Grand Total:** | | **$162,246,558.70** |

31. AUSAF UMAR SIDDIQUI is the only individual with signature authority for PC

INTERNATIONAL, LLC's business checking account #940-7117028.  The

following is an illustration of six (6) wire transfers, totaling $17,920,000, that were

made from PC INTERNATIONAL, LLC's business checking account #940-

7117028 to Venetian Marketing, Inc. (VMI) and WDR, LLC.  There is probable

cause to believe that these six (6) wire transfers are violations of Title 18, USC §

1957.  These six (6) wire transfers that AUSAF UMAR SIDDIQUI made took

place subsequent to payments that were made to PC INTERNATIONAL, LLC by

various Fry's vendors as follows and fully explained below:

| Payments to PC INTERNATIONAL, LLC Account #940-7117028 | | | Subsequent Transfers to Casinos | | |
|---|---|---|---|---|---|
| Date | Amount | Vendor | Date | Amount | Casino |
| 07/14/2005 | $3,000,000.00 | Behavior Tech Computer (USA) | 07/15/2005 | $3,000,000.00 | VMI |
| 01/10/2006 | $5,000,000.00 | Behavior Tech Computer (USA) | 01/13/2006 | $5,000,000.00 | VMI |

| | | | | | |
|---|---|---|---|---|---|
| 01/22/2007 | $3,000,000.00 | Promedia Technologies, Inc | 01/25/2007 | $3,000,000.00 | VMI |
| 06/12/2008 | $3,000,000.00 | Phoebe Micro, Inc. | 06/13/2008 | $2,950,000.00 | WDR, LLC |
| 10/10/2008 | $3,000,000.00 | Behavior Tech Computer (USA) | 10/10/2008 | $2,970,000.00 | WDR, LLC |
| 11/12/2008 | $1,000,000.00 | Lead Data International, Inc. | 11/12/2008 | $1,000,000.00 | WDR, LLC |

32. On July 13, 2005 the balance in the PC INTERNATIONAL, LLC's business checking account #940-7117028 was $354,464.44. On July 14, 2005, $3,000,000 was deposited to PC INTERNATIONAL, LLC's business checking account #940-7117028 via wire transfer from Behavior Tech Computer (USA). On July 15, 2005, a wire transfer totaling $3,000,000 was sent to Venetian Marketing, Inc. (VMI) at Bank of America. VMI is based in Las Vegas, Nevada. As a result, the monetary transaction conducted by AUSAF UMAR SIDDIQUI that sent $3,000,000 to VMI at Bank of America were proceeds of the $3,000,000 fraudulently obtained from Behavior Tech Computer (USA).

33. On January 9, 2006 the balance in the PC INTERNATIONAL, LLC's business checking account #940-7117028 was $406,608.29. On January 10, 2006, $5,000,000 was deposited to PC INTERNATIONAL, LLC's business checking account #940-7117028 via wire transfer from Behavior Tech Computer (USA). There were no other deposits on the account from January 10, 2006 to January 13, 2006, other than the $5,000,000 deposit from Behavior Tech Computer (USA). On January 13, 2006, a wire transfer totaling $5,000,000 was sent to VMI at Bank of America. As a result, the monetary transaction conducted by AUSAF UMAR SIDDIQUI that sent $5,000,000 to VMI at Bank of America were proceeds of the $5,000,000 fraudulently obtained from Behavior Tech Computer (USA).

34. On January 21, 2007, the balance in the PC INTERNATIONAL, LLC's business checking account #940-7117028 was $113,251.22.  On January 22, 2007, $3,000,000 was deposited to PC INTERNATIONAL, LLC's business checking account #940-7117028 via wire transfer from Promedia Technologies, Inc.  There were no other deposits on the account from January 21, 2007 to January 25, 2007, other than the $3,000,000 deposit from Promedia Technologies, Inc.  On January 25, 2007, a wire transfer totaling $3,000,000 was sent to VMI at Bank of America.  As a result, the monetary transaction conducted by AUSAF UMAR SIDDIQUI that sent $3,000,000 to VMI at Bank of America were proceeds of the $3,000,000 fraudulently obtained from Promedia Technologies, Inc.

35. On June 11, 2008, the balance in the PC INTERNATIONAL, LLC's business checking account #940-7117028 was $109,792.59.  On June 12, 2008, $3,000,000 was deposited to PC INTERNATIONAL, LLC's business checking account #940-7117028 via wire transfer from Phoebe Micro, Inc.  There were no other deposits on the account made on June 12, 2008 to June 13, 2008, other than the $3,000,000 deposit from Phoebe Micro, Inc.  On June 13, 2008, a wire transfer totaling $2,950,000.00 was sent to WDR, LLC.  WDR, LLC is located in Las Vegas, Nevada.  As a result, the monetary transaction conducted by AUSAF UMAR SIDDIQUI that sent $2,950,000 to WDR, LLC at Bank of America were proceeds of the $3,000,000 fraudulently obtained from Phoebe Micro, Inc.

36. On October 9, 2008 the balance in the PC INTERNATIONAL, LLC's business checking account #940-7117028 was $349,973.92.  On October 10, 2008,

$3,000,000 was deposited to PC INTERNATIONAL, LLC's business checking account #940-7117028 via wire transfer from Behavior Tech Computer (USA. On October 10, 2008, a wire transfer totaling $2,970,000 was sent to WDR, LLC. As a result, the monetary transaction conducted by AUSAF UMAR SIDDIQUI that sent $2,950,000 to WDR, LLC at Bank of America were proceeds of the $3,000,000 fraudulently obtained from Behavior Tech Computer (USA).

37. On November 11, 2008 the balance in the PC INTERNATIONAL, LLC's business checking account #940-7117028 was $50,663.68.  On November 12, 2008, $1,000,000 was deposited to PC INTERNATIONAL, LLC's business checking account #940-7117028 via wire transfer from Lead Data International, Inc.  On November 12, 2008, a wire transfer totaling $1,000,000 was sent to WDR, LLC. As a result, the monetary transaction conducted by AUSAF UMAR SIDDIQUI that sent $1,000,000 to WDR, LLC at Bank of America were proceeds of the $1,000,000 fraudulently obtained from Lead Data International, Inc.

38. Based on my analysis of the PC INTERNATIONAL, LLC's Wells Fargo business checking account #940-7117028, I conclude that the (6) wire transfers, totaling $17,920,000, that AUSAF UMAR SIDDIQUI sent to Venetian Marketing, Inc. (VMI) and WDR, LLC are proceeds of the wire fraud.  AUSAF UMAR SIDDIQUI then violated Title 18, USC § 1957 by knowingly conducting a monetary transaction on each occasion with criminally derived property of a value greater than $10,000 and was derived from the proceeds of wire fraud.

g. Corroborating information obtained from Secretary of State, State of California.

39. A search at the Secretary of State for the State of California (hereinafter Secretary of State) showed that "PC International, LLC" was initially created as a business in California on December 28, 1998. In this filing, "PC International, LLC" is listed as an import-export business. "A-UMAR SIDDIQUI" is listed as the initial agent for service. "800 E. CHARLESTON RD. (22), Palo Alto, California, 94303" is listed as the business address.

40. A statement of information renewal was filed with the Secretary of State on February 8, 2000. The filing identified the business as "PC INTERNATIONAL, LLC C/O A-UMAR SIDDIQUI". The filing listed the business as one involved in "trade & marketing". The "address of the principle executive office" is listed as "800 E. Charleston Rd. #22, Palo Alto, CA 94303". The "address of the office where records are maintained" is listed as "800 E. Charleston Rd. #22, Palo Alto, CA 94303". This address is AUSAF UMAR SIDDIQUI'S residence. The filing lists "A-UMAR SIDDIQUI" as the "manager / chief executive officer", and AUSAF UMAR SIDDIQUI'S signature appears at the bottom of the form.

41. A document titled "Statement of Information" was filed with the Secretary of State on July 3, 2008 for "PC INTERNATIONAL, LLC". "A-UMAR SIDDIQUI" was listed as the chief executive officer and manager.

### h. Corroborating information obtained via "trash-runs"

42. On November 24, 2008, IRS – CI Special Agents (SAs) retrieved AUSAF UMAR SIDDIQUI'S trash. The trash was obtained from trashcans located in front of AUSAF UMAR SIDDIQUI'S residence. Among the trash, the SAs found various

documents which included: a letter dated November 7, 2008, addressed to AUSAF

UMAR SIDDIQUI from Lead Data International, Inc.  The letter illustrates AUSAF

UMAR SIDDIQUI'S involvement in the kickback scheme.  The letter states the

following:

> Dear Omar,
>
> First I deeply appreciate all help to us.  I will do my best to support PCI as well.
> ...To avoid misunderstanding, I summarize our discussion as below:
>
> 1.   I will reserve $300K to combine with the checks to be cut on Nov 10 to
> temporarily support PCI.  The amount $1.0 million to be wired on Nov 11 after I
> receive $1.0 million of PCI post dated checks.
>
> 2.  PCI issues two checks to LDI, $500K dated Nov 28, and $500K dated Dec 8.
> You understood and promised LDI to cash out these two checks on time.  I will
> remind you on Nov 21 and Dec 1.
>
> 3.  Current prepay to PCI is about 1.5 million.  You promised to drop it to 1.0
> million in the near future.
>
> 4.  Fry's will cut more checks on Nov 12 (Wed), and on Nov 24 (Mon).
>
> As I told you yesterday, due to huge prepay, our cash flow is in big trouble now.  I
> need your help to get Fry's checks and PCI short term loan returned on time.

43.  On December 8, 2008, IRS – CI Special Agents (SAs) retrieved AUSAF UMAR

SIDDIQUI'S trash.  The trash was obtained from trashcans located in front of

AUSAF UMAR SIDDIQUI'S residence.  Among the trash, the SAs found various

documents which included: a purchasing order for merchandise pertaining to Lead

Data International, Inc.

23

## III. CONCLUSION

44. Given the confidential nature of this continuing investigation, I respectfully request that this Complaint and Affidavit be maintained under seal until this Court or another court of competent jurisdiction orders otherwise, except that Special Agents of the IRS may disclose this affidavit and the arrest warrant as necessary to effectuate the arrest and arraignment of the defendant.

45. WHEREFORE, I respectfully request that the Court issue an arrest warrant so that the defendant AUSAF UMAR SIDDIQUI be dealt with according to law for violations of Title 18, USC Section 1957, Money Laundering.


Andres Gonzalez
Special Agent
Internal Revenue Service, Criminal Investigation


Sworn to before me this
18 th day of December 2008


United States Magistrate Judge
Northern District of California

24